The last case of the day is People v. Tickson for the appellant, Mr. Pryor, for the athlete, Mr. Majors. You may proceed. Good afternoon. May it please the court, counsel. This is a termination case, as the panel is well aware of. As the panel knows, termination of parental rights is one of the most severe and deprivative, if you will, goals or orders that a court can enter, and therefore it must be proved that it is in the best interest of the children and that the unfitness of the parent is established by clear and convincing evidence. The best interest goal must be proven by the preponderance of the evidence. In the case at Bard, and I'm sure that the panel is aware of the facts, there was a termination of the mother's parental interest. Prior to the termination, the court heard evidence concerning the mother's progress or lack of progress in regard to achieving the goals of the service plan. The state alleged three grounds of unfitness. One was reasonable interests, the other was reasonable effort, and the third one was reasonable progress. The court found in its ruling, after the evidence completed on the unfitness phase, that the state had not proved that the mother did not exhibit reasonable interest. The court found that the state did not prove that the mother did not make reasonable effort. The court did find that the mother failed to make reasonable progress within nine months of the date of adjudication or any nine month period thereafter. It is the appellant's contention that the court's finding of unfitness is against the manifest way to the evidence. A blueprint that is used by both the state, the courts, and the Department of Children and Family Services is what's known as a service plan. I'm sure the panel is aware of that. Service plan contains certain goals that the department believes is essential towards the reunification of the family. In this case, the mother's goals were to find gainful and steady employment, stable housing, complete parenting classes, complete counseling, and she embarked upon her journey to try to accomplish those. The state introduced one witness who was the caseworker who said that at no time did the mother satisfy, accomplish the goals, or did she consider, the caseworker, that the child's return was imminent. Now the interesting thing about the goals in this case is that half of them, employment and housing, are a direct function of economic times. Of course the court is aware that it has been up and down economically in the nation, certainly in the state of Illinois. It's the appellate's contention that the employment goal, steady employment, she did her best to achieve that, had several internships or short hires at a state agency, that time ran out and she was unemployed. There was a period of time where she was contemplating SSI as income, but one of the requirements for SSI, at least according to the mother, was that she must not have a job. So she was staying away from the job in an effort to get income to support the family. Housing, of course, is the other goal that is affected by economic climates. The mother simply did not have enough money to maintain stable housing. Instead of that, what she tried to do when she was working in between jobs, she was trying to live on the cheap to get enough money to obtain housing. She did obtain housing for a period of about 60 to 90 days and then it was too burdensome for her to afford and she was again in between homes and or homeless. There was testimony that the mother had participated in parenting classes, but I think the final analysis was that she had not totally completed a parenting class. There was some problem with the one referred and the one that she chose herself did not impress the department, as I recall. Counseling was similar. There was a counseling referral made by the Department of Children and Family Services that was kind of dual purpose. Number one is counseling to help mental health problems, but at the same time is also kind of a primer or an instruction course to help the mother, in this case, budget her money and make the most of the money that she did get. The mother did not agree with the bipartisan, the bi-level concentration with the counseling, so she found counseling of her own, but at the time of the in-fitness hearing, that counseling had not been achieved. Basically what the appellate's position is in the case of BART is that the shelter care order was not supported by sufficient evidence to even establish probable cause. The permanency goal or review hearing where the permanency goal was changed from return home to substitute care pending court decision also was not supported by preponderance of the evidence. Both orders in those two cases, those two hearings, further removed the mother from the child, but also according to the mother's position were orders and rulings that were against the manifest weight of the evidence. The in-fitness portion was not sustained or supported by clear and convincing evidence, and finally the best interest was not supported by preponderance of the evidence, therefore the finding of a fitness and the finding that it was in the best interest of the children that the parental rights be terminated also was against the manifest weight of the evidence. These cases are problematical and troublesome, I'm sure, because of the weight and the importance of the bond that is being terminated by the court. The mother did the best she could in the circumstances that she found herself. She was buffeted back and buffeted about because of the economic climates, and she did not complete counseling and parenting, but does that truly make her unfit? The interesting thing is this, the hearing before the unfitness portion of the termination process was return home. At the last review hearing, the return home goal was changed to substitute clear pending court decision, and at that hearing it was a little unusual, but not totally unusual. There was evidence heard and representations made, and the evidence heard and the representations made were exactly the same as the evidence that was produced by the state at the unfitness portion of the hearing. A time passage of about four or five months had passed under this new goal, and then in my opinion, the appellate's position is the state just parroted or reproduced or ran again the same evidence for the unfitness without showing any more evidence of unfitness, and just relying on the passage of time to establish unfitness, is the appellate's position that she was not unfit and that the state did not prove unfitness. The orders terminating her parental rights and finding her unfit are against the manifest weight of the evidence. I would ask the court to reverse and remand this matter, to conduct further hearings as to whether or not the state has sufficient evidence to satisfy their burden of unfitness and best interest. Finally, as a closing note, I'm sure the court's mindful, but I'm going to go ahead and throw it out. In the best interest hearing, it was revealed to the court and testified by the caseworker that the adoptive placement for this child already had a sibling in the household. The sibling was a half-sibling, I can't remember if it was a sister or brother, but one of these child's half-sibling, I believe it was a daughter, was already in the household. I think that, more than anything else, is probably what persuaded the court that best interest would be served by the termination of parental rights because there was already an adoptive home that already had a relative in it, a relative child. The foster parent was not related and that it would be an easy decision to find that that would be in the best interest of the child. In my opinion, the respondents, certainly the court can consider that, but it is a little too short-sighted, if you will, the process is a little too expedited to find the adoptive placement where the other child is, and that's why the order was made. I have nothing further to add, I might have answers to any questions, if you have questions for my answers. I don't think so at this time, but you'll have additional time on rebuttal. Thank you very much. May I please the court, counsel? Listening to counsel, I think I interpreted his brief correctly because I divided mine into four issues. I guess there still can, and just as a way of housekeeping for my own sake, as far as I know, there's no reply brief by a respondent, and there was never any petition to this court to allow an appeal concerning permanency orders. As far as I know, those two things are true. So I've answered the shelter care argument, and my argument three, that the decision is subsumed into the case, especially in a case where mom admits the allegations at the adjudicatory hearing, which was about a month later. As to the merits, I've set forth the evidence at page two and three of my brief, and basically it's two people testifying about the father's drug addiction, imprisonment, mother's problems, and mother's prior indications with other children. Mother had a history of having children taken by DCFS at a young age and having her rights terminated. So on the merits, if we have to go there, I think the shelter care order should be affirmed, although again, according to this court, it's subsumed into the overall focus of the case, which is the best interest of the minor. The permanency order, the case Curtis B says you've got to get this court's permission to appeal. It's a discretionary appeal, and nobody ever appealed it, to the best of my knowledge. So that leaves the two remaining arguments, which are unfitness and best interest. Now those are factual arguments, as far as I can tell, there's no legal contest, there's no technical statutory contest, it's all about the facts, and the trial judge has already determined those facts. Judge Sanchez, he was in the best position to make those determinations, and I've set forth verbatim his rulings, and counsel here has admitted, and I don't fault him for that, but he's admitted that she failed in counseling and she failed in parenting. He's admitted that she failed in employment and housing, but ties those to economic factors. Now in their brief, repeatedly they make this argument, that because the trial judge did not find sufficient evidence for interest and efforts, that somehow, since the state lost two out of three, that this waters down the trial court's finding of unfitness based on the lack of reasonable progress, but there's no authority for that, and as far as I know this court has been saying for the 25 years that I know of, that one ground is enough, one is enough, and we've got one here. As to the best interest, as counsel's already pointed out, this minor is a baby at all times, a baby, she's, right now I think she's two years and two months, and she's been placed with her half-sister in an adoptive foster home and is doing well there. Can I answer any of the court's questions? I don't see any. Thank you. The gentleman in the front. In regard to the propriety of appealing the permanency goal hearing and saying that that it's not sustained by the sufficient proof, I would cite the court in Ray, MR, and MM where that was exactly the issue before the reviewing court, and they did consider it, not putting additional constraints on whether it is appealable or not. Basically, this is all supported in the record, and I know at least two-thirds of the court were trial judges and handled these types of hearings. If the court would look at the evidence in total from the state single witness, the caseworker, there was a lot of, I think so, maybe, probably, might, and it seems to me that those types of qualifying words fly in the face of clear and convincing evidence. The other matter is, well, I've been saying this for years, I suppose if someone wanted to compare my parenting of my children to somebody else's, I would not be surprised if I lost the majority of times in the best interest contest. So it's not really whether one's better than the other, it's whether or not the unfitness prevents the parent from discharging the parental duties such that termination is in the best interest, and as my friend, the counsel for the state, indicated, this was a baby, this baby is just now two years old, and it seems to me unreasonable that the mother wasn't given more chance and more time, considering her circumstances, which the court is also allowed to do, to achieve the goals of the service plan. One final note, as the counsel pointed out, I believe he said specifically the shelter care, but I believe it was in every phase of the hearing, counsel said that the trial court took into consideration the fact that the mother had other children removed, terminated, and was found unfit. Excuse me, I don't believe counsel said found unfit, but I think that's a natural progress. The record establishes any children that she had taken or had her rights terminated, it was not preceded by a finding of unfitness, it was a surrender of the children or child, and there's no finding of unfitness, and I hate to say that the mother was sold a bill of goods when she consented to the surrender of the first child, in that it wouldn't be considered as detrimental to any other children, but I believe the record does support at least that theory. Any questions? Thank you very much. Thank you. I take this matter under advisement and stand in recess until approval.